## City of Ashland v. Wylie.

(Decided June 5, 1936.)

R. CAMPBELL VAN SANT for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Boyd circuit court based on the verdict of a jury in the sum of $500 in favor of appellee and against the appellant. The action was filed in July, 1932, seeking to recover damages from the city of Ashland for the alleged wrongful taking of a strip of ground about 8 feet in width along the edge of the property of appellee abutting on a highway in the city of Ashland known in the record as Thirteenth street, the Ashland and Cannonsburg Pike, the Midland Trail, and U. S. Highway No. 60. The highway in question has been a public road for something over a hundred years. For a number of years prior to 1918, the road was paved with macadam to a width of about 16 feet. During that year this paving was torn up and a brick roadway put in to a width of 17 feet for a distance of about 5 miles beyond the then city limits of Ashland. In 1920 the city of Ashland extended its corporate limits to include the property here in question, as well as that portion of the turnpike on which it abutted. In 1928 the city undertook to widen the paved portion of the road in front of appellee's property, and, it is claimed, appropriated an 8-foot strip belonging to appellee running the entire length of the front of her lots. Appellee is the owner of lots 1 and 2 in the J. M. Ferguson subdivision which was laid out in 1902. Her property is described as follows:

"Beginning at a corner of the old Cannonsburg Pike, now Midland Trail, and York Street; thence running west with York Street 140 feet to a fifteen-foot alley; thence running north with said alley 100 feet to the corner of lot # 3; thence running east 142½ feet with said lot # 3 to the old line of the Ashland and Cannonsburg Pike; thence running south 100 feet to the place of Beginning."

It is claimed by appellee that her line abutting on the pike was definitely marked by a fence which ran within 2 or 3 feet of the paved highway, and it is likewise urged that the public right of way was limited to the actual paving and strip east of her fence.

A number of maps and plats are shown by the record to have been introduced at the trial, but none of them are before us. However, not one of the witnesses introduced by appellee to sustain her contention undertook to fix any of the calls in the description of appellee's property other than to take the fence running along

the eastern edge of the property as a starting point. Obviously, this testimony assumed one of the very points in issue. No one disputed the existence of the fence. The question was whether or not it marked appellee's boundary or whether it took in a portion of the public right of way.

The testimony indicates that there is no record evidence to show the exact width of the highway at this point, although a number of old statutes indicate that the right of way must have been at least 30 feet wide (which would be enough to cover the 8-foot strip here involved.) 2 Littell's Digest, 1097; Acts of 1852, c. 358; see, also, Commonwealth v. Caldwell, Litt. Sel. Cas. (16 Ky.) 168; Commonwealth v. Abney, 4 T. B. Mon. 477. Clearly, appellee could not commence the running of an adverse holding against the county or city without giving the notice required by sections 2546 and 2547 of the Kentucky Statutes. If the 8-foot strip in question was outside of the calls fixed by appellee's deed, it is plain that she had the burden not only of proving her adverse possession, but also notice of that possession to the county or city. Her deed ran "to the old line of the Ashland and Cannonsburg Pike." Therefore, wherever the line was, the public rights commenced where her line stopped. Presumably, the highway was at least 30 feet wide at the point in question.

The appellant introduced as a witness the engineer who platted the J. M. Ferguson subdivision, and he testified that in fixing the beginning corner of the lots abutting on the turnpike he had laid them out at a distance of 20 feet from the center line of the roadway, and that he considered the roadway to be 40 feet wide. Other witnesses for appellant commenced their survey of appellee's property at a fixed point which was established at the rear of the lots, and when this was done it demonstrated that the strip alleged to be taken is actually outside of the property called for by appellee's deed.

In the final analysis, therefore, we have presented a case in which the claimant is undertaking to establish title by adverse holding to a strip of property outside of her deed, and against the claims of the public to the property in question. As against the public rights in the property, it was incumbent on appellee, under the statute, to prove notice of her adverse holding, in the face of the fact that the very survey on which the de-

scription of her property is based recognized the public interest in the strip in question. This she did not do. All other questions are reserved.

Judgment reversed.